# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued December 12, 2017          Decided March 23, 2018

No. 16-1368

MARK E. LACCETTI,
PETITIONER

v.

SECURITIES AND EXCHANGE COMMISSION,
RESPONDENT

On Petition for Review of an Order of
the Securities & Exchange Commission

*Douglas R. Cox* argued the cause for petitioner. With him on the briefs was *Michael J. Scanlon*.

*Mark R. Freeman*, Attorney, U.S. Department of Justice, and *Lisa K. Helvin*, Senior Counsel, U.S. Securities and Exchange Commission, argued the causes for respondent. With them on the brief were *Mark B. Stern* and *Jennifer L. Utrecht*, Attorneys, U.S. Department of Justice, *Michael A. Conley*, Solicitor, and *Dominick V. Freda*, Assistant General Counsel, Securities and Exchange Commission.

Before: GRIFFITH, KAVANAUGH, and WILKINS, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* KAVANAUGH.

KAVANAUGH, *Circuit Judge*: The Public Company Accounting Oversight Board investigated an audit that had been conducted by the Ernst & Young accounting firm. The Board's investigation focused in part on Mark Laccetti, who was the Ernst & Young partner in charge of the audit. As part of the investigation, the Board interviewed Laccetti. During that investigative interview, the Board allowed Laccetti to be accompanied by an Ernst & Young attorney. But the Board denied Laccetti's request to also be accompanied by an accounting expert who would assist his counsel.

The Board ultimately charged Laccetti and found that he had violated Board rules and auditing standards. The Board sanctioned Laccetti, suspending him from the accounting profession for two years and fining him $85,000. The Securities and Exchange Commission affirmed the Board's decision.

Laccetti asks this Court to vacate the orders and sanctions against him. Laccetti contends that the Board infringed his right to counsel by unreasonably barring the accounting expert from assisting his counsel at the interview. We agree. We grant the petition for review, vacate the order of the Securities and Exchange Commission, and remand with directions that the Commission vacate the Board's underlying orders and sanctions.

\* \* \*

Congress has mandated that Board investigations use "fair procedures." 15 U.S.C. § 7215(a). Implementing that statute, the Board's Rule 5109(b) provides: "Any person

compelled to testify" in a PCAOB investigative interview "may be accompanied, represented and advised by counsel . . . ." Rule 5102(c)(3) further allows the Board to limit attendance at the interview to "(i) the person being examined and his or her counsel . . . and (iv) such other persons as the Board . . . determine[s] are appropriate . . . ."

Laccetti argues that the Board, in applying the rules, unlawfully barred an accounting expert from assisting Laccetti's counsel at the investigative interview. The Board stated that it denied Laccetti's request because Laccetti's expert was employed at Ernst & Young. The Board did not want Ernst & Young personnel present for the testimony of the Ernst & Young witnesses because it apparently did not want Ernst & Young personnel to monitor the investigation. That was the sole reason provided by the Board for denying Laccetti's request.

The Board's rationale suffers from three independent flaws.

*First*, the arbitrary and capricious standard requires that an agency's action be reasonable and reasonably explained. Here, the Board's explanation for denying Laccetti's request was not reasonable.

An Ernst & Young employee was already planning to attend (and did attend) Laccetti's interview – namely, the Ernst & Young attorney who accompanied Laccetti. Consistent with Board policy and relevant ethics rules, that Ernst &Young attorney could act as attorney for both Laccetti and the company. *See* PCAOB Release No. 2003-015 at A2-19 (Sept. 29, 2003). Given the presence of the Ernst & Young attorney at the interview, the Board's rationale for excluding the Ernst

& Young accounting expert – that the Board did not want Ernst & Young personnel to be present – makes no sense here.[1]

In its brief and at oral argument, as in the underlying agency orders, the Board has offered no good response to this point. The Board has simply repeated again and again that it had discretion to exclude an Ernst & Young accounting expert so as to ensure that Ernst & Young personnel could not monitor the investigation. Repetition does not equal logic. The Board's explanation, even when oft repeated, is not logical given the fact that an Ernst & Young attorney attended Laccetti's investigative interview. Pressed hard on this precise point at oral argument, the Board's capable counsel ultimately could muster no response and retreated to the Board's backup argument that any error by the Board in denying Laccetti the assistance of an accounting expert at his investigative interview was harmless error. *See* Tr. of Oral Arg. at 34-36.

---

[1] This is not a case where the Board sought to exclude all company-affiliated personnel from the interview on the ground that Laccetti wished to keep his testimony confidential from the company and there was a legitimate concern that company-affiliated personnel either could not or would not comply with Laccetti's request. *See, e.g.*, D.C. Bar Ass'n, Ethics Op. 296, Joint Representation: Confidentiality of Information (a client whose attorney represents someone else in the same matter must provide informed consent before attorney may disclose client's confidences to the co-client). Perhaps the Board could do that in an appropriate case if it wished. But we need not consider that hypothetical in this case because that is not what the Board did here. This is also not a case where the Board identified some specific reason why the company-affiliated accounting expert could not be present even if the company-affiliated attorney could be present. We do not suggest that such a distinction could never be drawn. But the Board did not do so in this case.

*Second*, even if the Board wanted to bar an Ernst & Young-affiliated accounting expert, that explanation would not justify the Board's denying Laccetti *any* accounting expert. Instead, the Board could have told Laccetti that he could bring to the interview an accounting expert who was not affiliated with Ernst & Young. The Board did not do so. Rather, the Board's letter to Laccetti flatly stated that "the presence of a technical expert consultant" is "not appropriate at this time." JA 458.

The Board nonetheless now claims (and the Commission agreed) that its letter was not intended to suggest that Laccetti could not bring any accounting expert, only that he could not bring an Ernst & Young-affiliated expert. But the Board's letter said no such thing and cannot reasonably be read that way. Indeed, we know that was not the intent of the letter, because the letter informed Laccetti that, as an alternative, Laccetti and his counsel could "consult[] with technical experts *before or after* his testimony." *Id.* (emphasis added). Even though it provided that alternative, the Board did *not* say that Laccetti could bring another accounting expert to assist his counsel *during the interview*. By telling Laccetti that he could bring an accounting expert to consult "before or after" his testimony, did the Board somehow imply that Laccetti also could bring an accounting expert to assist his counsel during the interview? Of course not. Both on its face and when read in context, the Board's letter barred Laccetti from bringing an accounting expert who could assist counsel during the interview.

In short, the Board's rationale for excluding this particular accounting expert did not justify the Board's blanket exclusion of an accounting expert who could assist Laccetti and his counsel during the interview.

*Third*, even putting those points aside, the Board's rules establish that the Board could not bar Laccetti from using an accounting expert to assist his counsel in these circumstances.

In *SEC v. Whitman*, 613 F. Supp. 48 (D.D.C. 1985), a district court in this circuit addressed an almost identical question in the context of the Administrative Procedure Act. Section 555(b) of the APA states: "A person compelled to appear in person before an agency or representative thereof is entitled to be accompanied, represented, and advised by counsel or, if permitted by the agency, by other qualified representative." 5 U.S.C. § 555(b). In *Whitman*, the SEC had allowed the witness to bring an attorney, but not an accounting expert, to his interview. The *Whitman* Court ruled that the SEC had impermissibly infringed the witness's right to counsel: "Given the extraordinary complexity of matters raised in agency investigations in this modern day, counsel trained only in the law, no matter how skillful, may on occasion be less than fully equipped to serve the client in agency proceedings. Unless the lawyer can receive substantive guidance from an expert technician – in this case, an accountant – when he determines in his professional judgment that such assistance is essential, his client's absolute right to counsel during the proceedings would become substantially qualified." *Whitman*, 613 F. Supp. at 49. In this context, an expert is an "extension of" counsel and gives "veritable meaning to the witness' right to counsel." *Id.* at 50.

The Board here does not challenge *Whitman*'s analysis of the APA's right to counsel. But the Board maintains (and the Commission agreed) that *Whitman*'s analysis is not persuasive in this case because *Whitman* dealt with the APA, not with the Board's rules. The Board says that its rules are different. We disagree that the right to counsel guaranteed by the Board's rules can reasonably be read to be less than the right to counsel

guaranteed in the APA. We find no meaningful distinction between the right to counsel in the APA and the right to counsel in the Board's rules. To be sure, the Board's rules grant the Board discretion to exclude "other persons" from an investigative interview as the Board deems "appropriate." But that grant of authority does not entitle the Board to infringe the right to counsel. The insight of *Whitman* – to reiterate, a case that the Board does not dispute here – is that the right to counsel in this context encompasses the right to have the assistance of an accounting expert during the interview.[2]

Under the Board's rules, the Board therefore may not bar a witness from bringing an accounting expert who could assist the witness's counsel during an investigative interview. (To prevent monitoring, the Board may exclude a company-affiliated accounting expert when no other company-affiliated personnel are allowed at the interview.) To be clear, the Board is always free to change its rules, subject to constitutional and statutory constraints. Our holding on this point is therefore exceedingly narrow. All we conclude in this case is that the Board, under its current rules, must allow a witness the assistance of an accounting expert when such an expert could assist counsel at an investigative interview. Our conclusion is especially narrow because the Board itself has long directed its staff to "permit a technical consultant to be present during investigative testimony." PCAOB Release No. 2003-15 at

---

[2] If the Board in the future wants to argue that *Whitman* was wrongly decided, we can consider that argument. But the Board has not advanced such an argument in this case. On the contrary, at oral argument, the Board's counsel was specifically asked about *Whitman*, and the Board's counsel did not say that *Whitman* was wrongly decided or that the Court should consider that question here. *See* Tr. of Oral Arg. at 37. Rather, counsel simply argued that the right to counsel in the APA was broader than the right to counsel in the Board's rules.

A2-18. So our decision on this point means no more than that the Board must apply its rules as the Board already applies its rules. The problem is that the Board did not follow its rules in this particular case.

In sum, for those three independent reasons, we conclude that the Board acted unlawfully when it barred Laccetti from bringing an accounting expert to assist his counsel at the investigative interview.

As a backup, the Board argues (and the Commission agreed) that any error in denying Laccetti's right to counsel was harmless because any error in denying the right to counsel did not affect the charging decision against Laccetti. *See* 5 U.S.C. § 706. We disagree.

In response to the Board's harmless error argument, Laccetti first contends that, in the context of a Board investigation, infringement of the right to counsel at an investigative interview is a structural defect not susceptible to harmless error analysis. Laccetti says that there is no good or meaningful way to assess whether the Board's infringement of the right to counsel at an investigative interview affected Laccetti's answers and thereby tainted the Board's later decisions to bring charges and find liability.

We need not consider the question of whether this kind of error is a structural error not susceptible to harmless error analysis. Even if the effect of such an error can be meaningfully assessed such that the denial of counsel were subject to harmless error analysis, the Commission itself conceded in this case that the Board's "decision to institute proceedings" against Laccetti "may have been based in part upon his investigative testimony," which occurred without the accounting expert present. *In the Matter of the Application of*

*Mark E. Laccetti, CPA For Review of Disciplinary Action Taken by the PCAOB*, Exchange Act Release No. 78764, 2016 WL 4582401, at \*15 (Sept. 2, 2016). The Board's infringement of Laccetti's right to counsel was not harmless in this case.

Therefore, the only reasonable remedy is for the Board, if it chooses and if the law otherwise permits, to open a new disciplinary proceeding against Laccetti and, if it chooses to re-interview Laccetti, to do so without violating his right to counsel. The right to counsel is guaranteed by the Board's rules. Infringement of that right is a serious matter. We cannot sweep that violation under the rug in the manner advocated by the Board in this case.

\* \* \*

We grant the petition for review, vacate the order of the Securities and Exchange Commission, and remand with directions that the Commission vacate the Board's underlying orders and sanctions. In light of our judgment, we need not and do not reach Laccetti's broader constitutional and statutory challenges.

*So ordered.*